IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE THE APPLICATION OF            )
**ALAN PAUL ADAMS**, on behalf of    )
**KAI WILLIAM BAILEY NAIK**, a minor,)
                                     )
            Plaintiff,               )
                                     )
    v.                               )   No. 04 C 7648
                                     )
**SHARMILA NAIK**.                   )
                                     )
            Defendant.               )

## MEMORANDUM OPINION AND ORDER

Alan Paul Adams, a citizen and resident of the United Kingdom (Petitioner), alleges that he is the father of a minor child, Kai William Bailey Naik (Kai), who was born in England on December 21, 1999. Petitioner invokes the Hague Convention on the Civil Aspects of International and Child Abduction (the "Convention"), a pact to which both the United States of America and the United Kingdom are parties. Petitioner also claims rights under provisions of the International Child Abduction Remedies Act, 42 U.S.C. § 11601 et seq. ("ICARA") and the Illinois Uniform Child Custody Jurisdiction Act, 750 ILCS 36/101 et seq. Petitioner moves for an order directing that he be permitted to return Kai to England. He claims that Kai's mother, Sharmila Naik (now Sharmila Naik-Taylor), also a citizen of the United Kingdom (Respondent), wrongfully abducted Kai, and that the child must be returned to England forthwith for a determination of custody rights. Petitioner also seeks an order

allowing him access to the child while the petition is pending. The parties were never married to one another and, except as set forth below, there has been no court order entered concerning Petitioner's paternity of Kai, and no order has been entered awarding Petitioner any custody or visitation rights with respect to Kai. Respondent alleges that she believes Adams is Kai's "natural father." Apart from Adams' paternity, the parties agree on none of the material background facts.

Respondent left England with Kai on August 15, 2004. After Petitioner learned where she and Kai were located, Petitioner filed this action and a companion action in England. Petitioner obtained two orders from the High Court of Justice, Family Division, in London, England. The High Court orders were issued on November 17, 2004 without prior notice to Respondent. They were, however served upon Respondent on November 21, 2004. (Affidavit of Lionel Swift. Q.C., attached to Petitioner's Response to Respondent's Answer). One of the orders declares that Alan Paul Adams shall have parental responsibility for Kai William Bailey Naik, born 21st December 1999. The other order declares that Kai William Bailey Naik is habitually resident in the United Kingdom and was wrongfully removed from the jurisdiction of England and Wales; it orders the defendant mother to return Kai to the jurisdiction of England and Wales and grants Respondent liberty to apply to vary or discharge the order on 48 hours notice. Respondent has not moved to vary or

discharge the order. The petition in this case was served upon Respondent at her home in Crystal Lake, Illinois on December 8, 2004.

Respondent contends that Petitioner has no custody rights to Kai under English or Illinois law within the meaning of the Convention because, among other things, the parties were never married, no order was ever entered conferring rights of custody to Petitioner, Petitioner's name does not appear on Kai's birth certificate as the father of the child, and Petitioner never applied for a parental responsibility order until three months after Kai was taken to the United States by which time the High Court no longer had jurisdiction over her or Kai. She also points out that the order of parental responsibility does not purport to, nor could it, award custody rights to Petitioner, since that order serves the same function as a parentage order under Illinois law: it merely declares the identity of the father of a child born out of wedlock and leaves issues of support and custody to be adjudicated in other proceedings.

For the reasons stated below, I deny the petition and pending motions of Petitioner and dismiss this action without prejudice to Petitioner's right to pursue his claims for relief in an appropriate tribunal.

The parties provide extremely divergent factual statements regarding the relative fitness of each to parent Kai. They are not

3

relevant here, and I make no findings as to custody or parental fitness of the parties. My jurisdiction in cases brought under the Convention does not extend to the determination of custody rights. Hague Convention, Article 19; 42 U.S.C. § 11601(b)(4); *Friedrich v. Friedrich*, 78 F.3d 1060, 1063-64 (6th Cir. 1996) *Rydder v. Rydder*, 49 F.3d 369, 372 (8th Cir.1995); *Feder v. Evans-Feder*, 63 F.3d 217, 221 (3d Cir.1995). The scope of my inquiry and power is defined in the Convention and in 42 U.S.C. § 11603.

Article 3 of the Convention provides

The removal or the retention of a child is to be considered wrongful where--

a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

Convention, art. 3, 19 I.L.M. at 1501.

A court applying Article Three of the Convention must answer a series of four questions:

(1) When did the removal or retention at issue take place? (2) Immediately prior to the removal or retention, in which state was the child habitually resident? (3) Did the removal or retention breach the rights of custody attributed to the petitioner under the law of the habitual residence? (4) Was the petitioner exercising those rights at the time of the removal or retention?

In addition, the court may inquire as to whether a factual basis exists for any of the defenses to a wrongful removal petition

4

enumerated in Article 13 of the Convention. *Mozes v. Mozes*, 239 F.3d 1067 (9th Cir. 2001).

The removal of Kai from the United Kingdom took place on August 15, 2004. Until that date Kai had habitually resided in the United Kingdom. Respondent would have the court look forward rather backward and determine that Illinois was the state of habitual residency (Respondent's Memorandum 12), but that is not what the Convention contemplates. *Miller v. Miller*, 240 F.3d 392, 400 (4th Cir. 2001)("The court must look back in time, not forward."(citing Friedrich v. Friedrich, 983 F.2d 1396, 1401 (6th Cir. 1993)).

The pivotal questions here are whether the removal breached Petitioner's rights of custody attributed by UK law and whether the petitioner was actively exercising such rights when Kai was removed from England. In the district courts, where the parties raise issues concerning the law of a foreign country, the court makes the determination as to what the law is in the foreign jurisdiction, and its determination is treated as a ruling on a question of law. Fed. R. Civ. P. 41.1.

Petitioner asserts in his papers that he had rights of custody attributed to him by UK law on August 15, 2004 because of the orders of the High Court entered November 17, 2004. Respondent has argued that Petitioner had no rights of custody under UK law, pointing out that the parties were never married, that petitioner's name does not appear on Kai's birth certificate as the father, that

5

Petitioner did not seek an order declaring him to have parental responsibility until three months after Kai's removal, that the order was obtained without prior notice to her and even if effective does not confer any rights of custody. Petitioner has submitted a legal opinion which concludes only that the High Court orders are valid and that they constitute a ruling of wrongful removal. Petitioner's expert, Lionel Swift, Q.C., does not opine that the orders confer custody rights. He merely speculates that as a matter of English law, "the English Court would hope for and expect that under the principles of comity, the American Court would see fit to order the return of Kai here."

Mr. Swift cites only one case, RE H, [2003] EWHC 492 (Fam), 2 FLR 153, and that case is distinguishable on several grounds. There, as here, the biological father did not have parental responsibility for the child as a legal matter, since the parents had never been married and no court had ever conferred parental responsibility on the father, but the court gave credence to the affidavits of the petitioner in which he averred that he was the biological father of the child and that there was a period in which there was contact between him and the child. RE H, supra, [2003] 2 FLR at 156. Most importantly, RE H was a case in which the father was not seeking a custody determination, but merely to enforce a right of access. The pivotal fact on which the court relied was that prior to the mother's removing the child to Spain, her

solicitors had sent a letter to their adversary which confirmed the father's expectation that the child would not be taken out of the jurisdiction without consulting the father. As to custody, the court expressly stated that

> So I make it crystal clear that I do not base the decision that I have reached to make a declaration in this case upon the prior existence of the legal proceedings in the Reading County Court. The fact that the father has applied to that court for contact and parental responsibility did not and does not, in my judgment, confer upon him at that stage any rights of custody, nor did it attribute a right of custody to the Reading County Court.

*RE H* at 157.

Respondent's English law expert, Steven William Scott Cobb, Q.C., cites a number of decisions which he maintains support his conclusions, namely, that Petitioner did not have cognizable custody rights to Kai under English law at the time he left England and that the November 17, 2004 High Court orders do not confer such rights. *In re S* (A Minor) (Custody: Habitual Residence) [1997] 3 WLR 596, [1998] A.C. 750, 759 (U.K. House of Lords) (father of an out of wedlock child has no parental rights prior to an order of court in his favor); *In re G* (a Child) (2002) EWHC 2219 (Fam) 28 October 2002 (although unmarried father shared care with the mother . . . notwithstanding that he had lived in the same household as the mother and shared the primary care of the child with the mother he had never acquired rights within the meaning of Articles 3 and 5 of the Convention). I also note that in *In Re S*, supra, the

7

trial judge was Petitioner's legal expert, Lionel Swift, Q.C., sitting as a Deputy Judge of the Family Division, which may explain the carefully limited and crafted affidavit Mr. Swift submitted in the present action.[1]

I conclude that at the time of the removal of Kai from England and Wales, Petitioner was not exercising "rights of custody" with respect to Kai under English law. Being an unmarried father whose name was not placed on Kai's birth certificate and not having acted previously to obtain a formal declaration of parental responsibility, much less custody, Petitioner had no such rights. Therefore, the removal was not "wrongful" within the meaning of the Convention, and I deny Petitioner's motion for return of Kai to the UK and dismiss the petition. In view of this ruling, I do not have to reach the merits of Respondent's asserted defense that return of Kai to the jurisdiction of England and Wales would subject Kai to a grave risk of harm.

As to Petitioner's motion for access to Kai, this court has no jurisdiction to grant it. There is a difference in wording between Articles 12 and 21 of the Convention. Article 12 specifically confers jurisdiction upon judicial or administrative authority of

---

[1] The decision on the merits in *In re S* did extend rights to the plaintiff father under the Hague Convention, but on the ground that at the time the child in that case was retained in Ireland, the child was a habitual resident of England and that the father had by that date obtained an order from an English court granting him interim care and control of the child.

member nations to effectuate the return of a child wrongfully removed. There is no explicit grant of authority to grant access rights. *Compare* Convention, Article 21. Accordingly, while an action for wrongful removal is pending, a district court may order access as a provisional matter, but once there has been a determination that the removal was not wrongful, the court's power to grant access rights on a provisional basis is terminated. *Ly v. Heu*, 296 F.Supp.2d 1009, 1011 (D.Minn. 2003); *Wiggill v. Janicki*, 262 F.Supp.2d 687 (S.D.W.Va. 2003); Fernandez v. Yeager, 121 F.Supp.2d 1118 (W.D.Mich. 2000). I must therefore deny the motion for access also.

I express no views on the underlying issues of Petitioner's right to have himself declared Kai's legal father or what further rights he might have if such an order were granted by an Illinois state court. My rulings are based on the limitations of this court's jurisdiction, and do not leave Petitioner without the possibility of obtaining relief on substantive issues in an appropriate tribunal.

**ENTER ORDER:**

*/s/ Elaine E. Bucklo*

**Elaine E. Bucklo**
United States District Judge

Dated: April 4, 2005